**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

KRISTI TAYLOR, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

B C S S, LTD. D/B/A LOU BACHRODT CHEVROLET COCONUT CREEK,

*Defendant*.
________________________________________/

**CLASS ACTION**

**Case No.**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

1. Plaintiff, Kristi Taylor ("Plaintiff"), brings this action against Defendant, B C S S, LTD. d/b/a Lou Bachrodt Chevrolet Coconut Creek ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

**NATURE OF THE ACTION**

2. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").

3. Defendant is an automotive dealership that sells new and pre-owned vehicles and other used vehicles, and provides automotive financing and leasing options, vehicle maintenance and repair services, and automotive parts and accessories to consumers throughout the State of Florida.

4. To promote its goods and services, Defendant engages in aggressive text message and telephonic sales call campaigns to consumers with no regards for consumers' rights under the TCPA and the FTSA, even after customers opt out from Defendant's communications.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Classes, and any other available legal or equitable remedies.

**JURISDICTION AND VENUE**

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present. This Court also has supplemental jurisdiction over Plaintiff's Florida state law claims under 28 U.S.C. § 1367 because Plaintiff's FTSA claim arises from the same common nucleus of operative facts as Plaintiff's TCPA claims.

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the Southern

District of Florida and, on information and belief, Defendant has sent the same text messages and calls complained of by Plaintiff to other individuals within this judicial district.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of the State of Florida

9. Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 0280 (the "0280 Number") that received Defendant's telemarketing solicitations.

10. Defendant's principal place of business is at 5500 N State Rd 7, Coconut Creek, FL 33073.

11. Defendant directs, markets, and provides its business activities throughout the United States and the State of Florida.

12. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

13. Beginning on or about October 2026, Defendant sent or caused to be sent multiple telemarketing text messages and placed telemarketing calls to Plaintiff's 0280 Number, from telephone numbers (754) 203-5672, (954) 398-5604, (844) 685-6017, (954) 247-3000, and (954) 804-3817.

14. Plaintiff received text messages from Defendant's (754) 203-5672 telephone number on October 21, 2026, and October 24, 2026, as shown below:




15. Plaintiff also received text messages from Defendant's (954) 398-5604 telephone number, including but not limited to those sent on October 21, 2026, and October 23, 2026, as shown below:







16. Defendant also placed telemarketing calls to Plaintiff's 0280 Number from telephone number (954) 804-3817 on October 16, 2026, and from telephone number (954) 247-3000 on October 21, 2026, October 22, 2026, and multiple times on October 23, 2026, including a call on October 23, 2026, on which Defendant left Plaintiff a voicemail, as shown below:




17. On or about October 23, 2026, Plaintiff responded with the message "You guys have called me way too many times, please stop" to Defendant's (954) 398-5604 telephone number, using clear and unambiguous opt-out language to opt out of any further communications with Defendant, as shown below:




18. This same day, Plaintiff again responded to Defendant's (954) 398-5604 telephone number with the message "I never confirmed an appointment. I am asking you to stop.", as shown above.

19. Despite Plaintiff's requests, Defendant continued sending unwanted text messages to Plaintiff's 0280 Number, on October 24, 2026, from Defendant's (754) 203-5672 number, as shown below.




20. On or about October 25, 2026, Plaintiff responded with the message "Stop" to Defendant's (754) 203-5672 telephone number, using clear and unambiguous opt-out language to opt out of any further text message communications with Defendant, as shown above.

21. This same day, following Plaintiff's clear opt-out request, Defendant responded with a confirmation message stating: "You have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe." (as shown above).

22. Plaintiff also sent Defendant's (754) 203-5672 telephone number the following written message: "I am formally revoking any and all consent previously provided through your website to receive sales or marketing calls and text messages. I have already requested that your dealership stop contacting me." (as shown above).

23. Notwithstanding Plaintiff's requests and Defendant's confirmation, Defendant continued sending unwanted text messages to Plaintiff's 0280 Number, on October 26, 2026, from Defendant's (844) 685-6017 number, as shown below:




24. On or about October 26, 2026, Plaintiff again responded to Defendant in writing: "I am formally revoking any and all consent previously provided through your website to receive sales or marketing calls and text messages. I have already requested that your dealership stop contacting me." (as shown above).

25. Defendant responded: "Understood, Kristi. Your request is noted. We'll respect your preference and stop sales and marketing messages." (as shown above).

26. This demonstrates Defendant's complete failure to maintain any functional internal do-not-call procedures and to honor consumer opt-out requests, utilizing multiple telephone numbers to evade opt-out requests.

27. Defendant has the capability of immediately complying with Plaintiff's opt-out request.

28. Defendant continued to send text messages to Plaintiff after Plaintiff's "stop" requests.

29. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's telephone solicitations by telling Defendant "stop", but Defendant continued to text message Plaintiff intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

30. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

31. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

32. Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's explicit opt-out instruction.

33. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

34. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not maintain an internal do-not-call list.

35. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages and calls it sent and placed to Plaintiff as reflected by the fact that Plaintiff made an explicit opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to place communications while utilizing multiple telephone numbers to continue the harassment and circumvent Plaintiff's opt out.

36. These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt-out of future communications are honored within a reasonable time.

37. Indeed, Plaintiff's and the Class members' opt-out requests were not honored within a reasonable time from when the opt-out request was made.

38. Defendant's communications were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

39. Defendant's communications constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting Defendant's vehicle sales, financing, and automotive services.

40. The information contained in the text messages and calls advertise Defendant's various services and promotions, which Defendant sends to promote its business.

41. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 C.F.R. § 64.1200(d)(1).

42. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list pursuant to 47 C.F.R. § 64.1200(d)(2).

43. Defendant placed the subject text messages and calls within this judicial district and, therefore, Defendant's violations of the TCPA and FTSA occurred within this district. Upon information and belief, Defendant caused other text messages and calls to be sent and placed to individuals residing within this judicial district.

44. Defendant's text messages and calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

45. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted.

46. Specifically, Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing calls with prerecorded voice messages.

47. Plaintiff has no existing business relationship with Defendant.

48. To the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes, that consent was expressly revoked on or about October 23, 2026, when Plaintiff revoked her consent.

49. Plaintiff is the subscriber and sole user of the 0280 Number and is financially responsible for it.

50. Plaintiff's 0280 Number is her residential number which she uses for personal purposes.

51. Defendant's unsolicited text messages and calls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16- 2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

52. Plaintiff registered her 0280 Number with the national do-not-call registry on December 12, 2024, and has been registered at all times relevant to this action.

53. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

54. The communications originated from at least telephone numbers (754) 203-5672, (954) 398-5604, (844) 685-6017, (954) 247-3000, and (954) 804-3817, numbers which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

55. Upon information and belief, Defendant has access to outbound transmission reports for all text messages and calls sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message and call logs showing Plaintiff's and the Class members inbound opt-out requests.

56. To place the calls, Defendant used a communications platform (the "Platform"), which permitted Defendant to transmit blasts of communications automatically and without any

human involvement. The Platform automatically made a series of calls to Plaintiff's, and the Class members stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

57. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

58. The Platform has the capacity to schedule the time and date for future transmission of communications, which was in fact utilized by Defendant.

59. The Platform also has an auto-reply function that results in the automatic transmission of calls.

60. Defendant was not required to and did not need to utilize the Platform to send communications to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of call advertisements at a nominal cost to Defendant.

61. Defendant would be able to conduct its business operations without sending automated calls to consumers.

62. Defendant would be able to place calls to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending communications.

63. Defendant would be able to place calls to consumers without consent by utilizing a non-automated calls system.

64. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting communications.

65. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

66. Compliance with the FTSA will not result in Defendant having to cease its business operations.

67. Compliance with the FTSA will not result in Defendant having to alter the prices of any goods or services it provides in the marketplace.

68. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

69. Plaintiff and the Class members revoked any consent they may have provided Defendant to contact them by responding with “stop” opt-out instructions.

70. Defendant’s unwanted telemarketing text messages and calls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant’s text messages and calls also inconvenienced Plaintiff and caused disruption to her daily life.

71. Defendant’s unwanted telemarketing communications caused Plaintiff actual harm. Specifically, Plaintiff estimates that she has wasted fifteen to thirty seconds reviewing each of Defendant’s unwanted messages. Each time, Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the message.

72. Next, Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant’s unwanted text messages and calls. In all, Defendant’s violations of the TCPA caused Plaintiff to waste at least fifteen minutes of her time in addressing and attempting to stop Defendant’s solicitations.

## CLASS ALLEGATIONS

**PROPOSED CLASSES**

73. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

74. Plaintiff brings this case on behalf of the following "Classes" defined as follows:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) received a telephone call by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days and (4) for the purpose of promoting Defendant's products and services**
>
> **National Internal Do Not Call Class: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) received at least two text messages within any 12-month period; (2) from Defendant or on Defendant's behalf; (3) for the purpose of promoting Defendant's products and services; (4) to the person's personal telephone number; (5) while Defendant did not institute procedures that met the minimum standards required by 47 C.F.R. § 64.1200(d)(1)-(6).**
>
> **FTSA Stop Class: All persons in Florida who, since July 1, 2021, through the date of class certification, received one or more telephone calls, from Defendant, regarding Defendant's goods or services, to said person's cellular telephone number, after having previously communicated to Defendant that they did not wish to receive outbound telephone calls transmissions from Defendant.**

75. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each Class but believes the Class members number in the several thousands, if not more.

76. Also excluded from the Classes are persons who, after making a request to Defendant to not receive future communications, subsequently affirmatively opted-in to receive calls or text messages from Defendant.

**NUMEROSITY**

77. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout the United States without their prior express written consent and/or after they had requested to opt-out. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

78. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's calls records.

**COMMON QUESTIONS OF LAW AND FACT**

79. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

a) Whether Defendant sent telemarketing text messages and placed telemarketing calls to Plaintiff's and Class members' cellular telephones;

b) Whether Defendant violated 47 C.F.R. § 64.1200(c);

c) Whether Defendant violated 47 C.F.R. § 64.1200(d);

d) Whether Defendant violated Fla. Stat. § 501.059;

e) Whether Defendant adhered to requests by Class members to stop sending text messages and placing calls to their telephone numbers;

f) Whether Defendant keeps records of recipients who revoked consent to receive telephone calls;

g) Whether Defendant has any written policies for maintaining an internal do not call list;

h) Whether Defendant's conduct was knowing and willful; and

i) Whether Defendant is liable for damages, and the amount of such damages.

80. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telemarketing text messages and calls to consumers after they had requested to be opted out, while they were registered on the DNC Registry, Plaintiff and the Class members will have identical TCPA and FTSA claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

81. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

82. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**SUPERIORITY**

83. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate

claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

84. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain Class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

85. Plaintiff repeats and re-alleges paragraphs 1 through 84 of this Complaint and incorporates them by reference herein.

86. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

87. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

88. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

89. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

90. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

91. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

92. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## COUNT II
**Violation of 47 U.S.C. § 227(c)(5)**
**(Individually and on behalf of the National Internal Do Not Call Class)**

93. Plaintiff re-alleges and incorporates paragraphs 1 through 84 as if fully set forth herein.

94. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

95. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded- voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to

> receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

47 C.F.R. § 64.1200(d)(3), (6).

96. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.*"

47 C.F.R. § 64.1200(e).

97. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive text messages from Defendant.

98. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

99. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on its behalf, pursuant to 47 C.F.R. § 64.1200(d).

100. Because Plaintiff and the Internal Do Not Call Class members received more than one communication in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

101. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

102. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

103. Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

104. Plaintiff and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT III**
**Violation of FLA. STAT. § 501.059(5)(a)**
**(On Behalf of Plaintiff and the FTSA Stop Class)**

105. Plaintiff re-alleges and incorporates paragraphs 1 through 84 as if fully set forth herein.

106. In pertinent part, the FTSA provides that a telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer who has previously communicated that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission made by or on behalf of the seller whose goods or services are being offered. Fla. Stat. § 501.059(5)(a).

107. The FTSA defines a "telephone solicitor" as a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including but not limited to calls made by use of automated dialing or recorded message devices. Fla. Stat. § 501.059(1)(i).

108. Defendant is a telephone solicitor under the FTSA because it made or caused to be made telephonic sales calls, to promote its automotive sales and services in Florida. Under the FTSA, a "telephonic sales call" includes a "voicemail transmission." Fla. Stat. § 501.059(1)(j), (l).

109. Plaintiff and the FTSA Stop Class members are consumers who received one or more outbound telephone calls regarding Defendant's goods or services after they had previously communicated to Defendant that they did not wish to receive such communications made by or on behalf of Defendant.

110. Plaintiff communicated to Defendant on or about October 23, 2026, that she did not wish to receive further communications by responding "You guys have called me way too many times, please stop" to Defendant's telemarketing communications.

111. Defendant failed to honor Plaintiff's and the FTSA Stop Class members opt-out requests and continued to initiate outbound telephone calls made by or on behalf of Defendant regarding Defendant's goods or services.

112. As a result of Defendant's conduct, Plaintiff and the FTSA Stop Class members were harmed and are entitled to statutory damages of at least $500.00 for each violation, injunctive relief against future violations, and, to the extent Defendant's violations are determined to be knowing or willful, treble damages as provided by Fla. Stat. § 501.059(10).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA and FTSA;

c) An order declaring that Defendant's actions, set out above, violate the TCPA and FTSA;

d) An injunction requiring Defendant to cease all telephonic sales calls prohibited by the TCPA and FTSA, and to otherwise protect the interests of the Classes;

e) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Classes, hereby demands a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the text messages and telephone calls as alleged herein.

Dated: November 10, 2026

Respectfully Submitted,

**Shamis & Gentile, P.A.**
*/s/ Christopher Berman*
Christopher E. Berman, Esq.
Florida Bar # 1010654
cberman@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW P.A.**
*/s/ Scott Edelsberg*
Scott Edelsberg, Esq.
Florida Bar No. 0100537
20900 NE 30th Ave., Suite 417

Aventura, Florida 33180
Telephone: 305-975-3320
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Classes*